UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

       v.                                  **MEMORANDUM & ORDER**
                                         23-CR-201 (WFK)

THIERNO MARIFOU BAH,

                 Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 8, 2024, Defendant pled guilty to the sole count of the Indictment, charging Defendant with illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2). Plea Agreement ¶ 1, ECF No. 22; Indictment, ECF No. 9. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to three years of probation with both the general and special conditions of supervision and a $100.00 mandatory special assessment.

### I. BACKGROUND

On January 5, 2015, Defendant was sentenced to five years of incarceration for First Degree Rape. Presentence Investigation Report ("PSR") ¶ 19, ECF No. 24. Specifically, on March 18, 2013, Defendant violently assaulted his then-girlfriend by pushing her, punching her, placing his hands around her neck, forcibly removing her pants, and, without the victim's consent, inserting his penis into her vagina. *Id.*; Government Sentencing Memorandum ("Gov't Mem.") at 1, ECF No. 29; *see also* Defense Sentencing Memorandum ("Def. Mem.") at 4, ECF No. 28. As a result of Defendant's horrific assault, the victim received lacerations on her face, arms, body, legs, and hands. PSR ¶ 19. Defendant was ordered deported in June 2017, and was removed from the United States to Guinea on November 14, 2017. *Id.* ¶ 3.

On March 5, 2023, Defendant arrived at John F. Kennedy International in Queens, New York and attempted to enter the United States without receiving prior permission from the United States Attorney General and Secretary of the United States Department of Homeland

1

Security. *Id.* ¶¶ 1, 4; Def. Mem. at 7. Law enforcement agents then arrested Defendant. PSR ¶ 4

On March 6, 2023, the Government filed a single-count Complaint charging Defendant with illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2). Complaint, ECF No. 1. On March 8, 2023, Defendant was released on bond following his arraignment on the Complaint. PSR ¶ 4; ECF Nos. 5-6. Soon thereafter, Defendant was detained by U.S. Immigration and Customs Enforcement ("ICE") until October 11, 2023, after which he was released on bond. *See* PSR ¶ 4; October 11, 2023 Minute Entry.

On May 4, 2023, the Government filed a single-count Indictment charging Defendant with illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2). Indictment, ECF No. 9.

On March 8, 2024, Defendant pled guilty to the sole count of the Indictment, charging Defendant with illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2). Plea Agreement ¶ 1, ECF No. 22. As part of his plea agreement, Defendant agreed not to appeal or otherwise challenge his sentence or conviction if the Court imposes a sentence at or below 30 months of imprisonment. *Id.* ¶ 4.

## II.     LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1.  Family and Personal Background

Defendant was born on May 9, 1989 to Saidu Bah and Fatumata Diaraye Wann in Mamou, Guinea. PSR ¶ 26. Defendant is a member of the Fulani ethnic group. *Id.* ¶ 32. Due to his mother's health issues, Defendant began living with his father and stepmother, Aissata Diallo, when he was seven-years-old. PSR ¶ 28; PSR Addendum at 1, ECF No. 30. Defendant's father currently resides with Defendant in the Bronx, is aware of the instant case, and remains supportive of Defendant. PSR ¶¶ 26, 40-41. Defendant's stepmother passed away in 2021. *Id.* Defendant does not have a good relationship with his mother. *Id.*; *but see id.* ¶ 38. While Defendant does not have a close relationship with his brother, his brother is aware of the instant case and remains supportive of Defendant. *Id.* ¶ 27; *see also id.* ¶ 38. Defendant has three paternal half-siblings, two of whom are aware of the instant case and remain supportive of

3

Defendant. *Id.* ¶ 27. Defendant does not have a relationship with his remaining half-sibling. *Id.*; *but see id.* ¶ 38.

Defendant was primarily raised by his stepmother, who Defendant reports took good care of him. *Id.* ¶¶ 26, 28. However, Defendant had a difficult childhood. *Id.* ¶ 28. Defendant suffered beatings and corporal punishment at the hands of his mother, father, and school's staff members. *Id.* ¶ 28, 29; *see also* Def. Mem. at 3. While Defendant had his needs met while growing up, he was forced to share food with eight to nine other people at school. PSR ¶¶ 28, 29.

Defendant has been married to Haja Issa Diallo since 2022. *Id.* ¶ 36. Ms. Diallo currently resides in Sierra Leone; however, she and Defendant share a good relationship and speak approximately twice weekly. *Id.* Ms. Diallo's father is attempting to secure a United States immigration visa for her. *Id.*

On July 10, 2009, Defendant arrived in the United States with political asylum predicated on his father's political persecution. *Id.* ¶¶ 30, 32; *see also* Def. Mem. at 3.

Following Defendant's incarceration for the aforementioned sexual offense, he was deported to Guinea in 2016 and taken by soldiers to a Guinean political prison called "Camp Makambo." *Id.* ¶¶ 30, 32. Defendant reports his imprisonment in Camp Makambo was due to his father's political activities—indeed, the same political activities which led to Defendant's prior grant of political asylum in the United States. *Id.* ¶ 32; *see also* Def. Mem. at 4. Defense counsel details, in part, Defendant's experiences in Camp Makambo:

> Defendant was kept in a cage and only given clothes when he was being forced to work in slave-like conditions; he was beaten and whipped; his captors murdered a prisoner who complained to other prisoners about the conditions of confinement. When officials from a human rights organization later entered the prison to investigate

4

> reports about the murdered prisoner, they tried to speak with Mr. Bah. Mr. Bah's captors witnessed this, and so, even though Mr. Bah had refused to divulge any information about the prisoner's murder to the human rights lawyers, his captors accused him of being an informant. For his punishment, they filled his mouth with a strong acid and forced him to swallow it.

Def. Mem. at 4-5; *see also* PSR ¶ 33. Defense counsel includes photographs of Defendant's back marred with scars and Defendant's tongue, which was disfigured after Defendant was forced to swallow acid. Def. Mem. at 6.

Defendant was briefly released from Camp Makambo in 2021. *See* Def. Mem. at 5; PSR ¶ 34. However, shortly after Defendant went to register with his father's political party and attended a demonstration which turned violent, Defendant was reincarcerated at Camp Makambo. Def. Mem. at 5; PSR ¶ 34. Defendant remained in Camp Makambo until his escape in December 2022. PSR ¶ 35.

After Defendant illegally reentered the United States as described *supra* at Section I, an immigration judge found it was more likely than not Defendant would be tortured if returned to Guinea. Def. Mem. at 1; *see also* PSR ¶ 39. As a result, while Defendant is removable, ICE has granted Defendant deferral of removal under the Convention Against Torture. Def. Mem. at 1; PSR ¶ 39. Defense counsel characterizes such deferral of removal as "indefinite." Def. Mem. at 1. Defendant therefore has immigration status in the United States and is subject to numerous conditions of supervision. PSR Addendum at 1; *see also* Def. Mem. at 1-2; Ex. A to Def. Mem., ECF No. 28-1 (immigration documents explaining Defendant's conditions of supervision); Gov't Mem. at 2.

    **2.**    **<u>Educational and Employment History</u>**

In Guinea, Defendant graduated from the College of Agriculture. PSR ¶ 55.

In the United States, Defendant attended—but did not complete—a six-month program at the Professional Banking College in Manhattan, New York. *Id.* ¶ 55. Defendant also has received numerous professional licenses and certificates. *Id.* ¶ 57; *see also* Def. Mem. at 8-9; Ex. B to Def. Mem, ECF No. 28-2.

Defendant has previously worked handling inventory at Lobster Place in the Bronx; as a home health aide with Aliah Home Care in Queens; as a car wash laborer; as a restaurant dishwasher; and handling inventory at Just Bagel in the Bronx. PSR ¶¶ 59-64; *see also* Ex. B to Def. Mem. (showing March 2024 award from Just Bagel). After Defendant left his job at Just Bagel following a workplace injury, PSR ¶ 59, Defendant completed the Center for Employment Opportunities Pathways 2 Employment training program for the following three months and worked four days a week while looking for long-term opportunities, Def. Mem. at 9; *see also* Ex. B to Def Mem. In November 2024, Defendant began working full-time for D.D.S. Mechanical Plumbing and Heating Corp. Def. Mem. at 9.

### 3. Prior Convictions

As discussed *supra* at Section I, Defendant has one prior conviction for Rape in the First Degree, for which Defendant was sentenced to five years of incarceration. PSR ¶ 19. This conviction is the predicate for the instant illegal reentry offense. *See* PSR ¶ 1; *see generally* 8 U.S.C. § 1326(b)(2).

### 4. Medical and Mental Health

Defendant suffered from seizures as a young child. Def. Mem. at 3. The Court has reviewed the photographs evidencing the physical results of Defendant's torture. Def. Mem. at 6. In addition to the injuries shown in those photographs, Defendant still experiences pain in his back, knee, and head from his experiences at Camp Makambo. PSR ¶ 43. The acid Defendant

6

was forced to swallow burned his stomach lining, resulting in gastrointestinal issues. PSR ¶ 43; *see also* Def. Mem. at 8. Defendant bears physical scars on his legs and buttocks, as well as those photographed on his back, from prison guards striking him with both cords and their own boots. PSR ¶ 44. As defense counsel asserts, Defendant "cannot sit for long stretches" and "recoils from restrictive clothing and most touch." Def. Mem. at 8.

During his time in the United States, Defendant sustained workplace injuries to his hand, forearm, and knee. PSR ¶¶ 45, 47. Defendant is currently prescribed medication for his physical ailments. *Id.* ¶¶ 46, 47.

Defendant suffers from post-traumatic stress disorder ("PTSD") stemming from his torture and abuse at Camp Makambo, from which he experiences "intense psychological symptoms." Def. Mem. at 6; *see also* PSR ¶ 48. While previously in immigration detention, Defendant made numerous attempts to take his own life. PSR ¶ 49. Defendant has been prescribed psychiatric medication, *id.* ¶ 50, and has sought mental health counseling for his PTSD, Def. Mem. at 8; PSR ¶ 49.

### 5. Substance Abuse

Defendant reports a history of alcohol abuse. PSR ¶ 52; *see also* Def. Mem. at 3-4. Defendant consumed more than 12 beers a day for between six and 12 months in 2012. PSR ¶ 52. However, Defendant has not consumed alcohol since his state case for sexual assault, which he attributes to his alcohol abuse. *Id.*; *see also* Def. Mem. at 4. Defendant reported participating in two alcohol-related programs. PSR ¶ 53; *see also* Def. Mem. at 8; Ex. B to Def. Mem.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

7

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court recognizes the severity of the offense of illegal reentry to the United States, particularly in a case such as this where Defendant was previously convicted of, and served an incarceratory sentence for, a violent sexual offense. *See Supra* Section I. However, as discussed *supra* at Section II.A, the Court acknowledges and considers the horrific torture and abuse motivating Defendant's reentry to the United States. The Court further recognizes Defendant been granted deferred removal pursuant to the Convention Against Torture, and will be subject to ICE supervision while under that deferred removal. *See supra* Section II.A. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to the sole count of the Indictment, charging him with illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2). Plea Agreement ¶ 1.

Defendant faces a statutory maximum term of imprisonment of twenty years and no minimum term of imprisonment. 8 U.S.C. § 1326(a) and (b)(2). Defendant faces a maximum

8

term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If Defendant violates a condition of release, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is also eligible for not less than one nor more than five years of probation, and, barring extraordinary circumstances, the Court must impose a fine, restitution, or community service as a condition of probation. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b). However, Defendant does not appear able to pay a fine. PSR ¶ 67.

The Court is also required to impose a mandatory special assessment of $100.00 per count. 18 U.S.C. § 3013.

### D. The Kind of Sentences and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2), is U.S.S.G. §2L1.2, which provides a base offense level of eight. Because Defendant received a sentence of five or more years for a felony offense committed before Defendant was first ordered deported from the United States, ten additional levels are added. U.S.S.G §2L1.2(b)(2)(A). Three levels are removed pursuant to U.S.S.G. §3E1.1 to account for Defendant's timely acceptance of responsibility for the offense. Altogether, Defendant's total adjusted offense level is 15. All parties agree with these calculations. PSR ¶ 17; Gov't Mem. at 2; Def. Mem. at 8.

The parties agree Defendant has a criminal history score of three and a criminal history category of II. PSR ¶¶ 20-21; *see generally* Gov't Mem. at 2; Def. Mem. at 8.

9

Based on a criminal history category of II and a total offense level of 15, the recommended Guidelines range of imprisonment is 21 to 27 months. U.S.S.G. Ch. 5, Pt. A. All parties agree with this calculation, which the Court adopts in full. PSR ¶ 69; Gov't Mem. at 2; Def. Mem. at 8.

The parties' sentencing recommendations vary.

Probation originally recommended a bottom-of-the-Guidelines sentence of 21 months of custody. Probation Recommendation at 1, ECF No. 24-1. In recommending that sentence, Probation emphasized: the seriousness of Defendant's pre-deportation rape conviction; the torture and trauma Defendant experienced in Guinean prison after his deportation; and Defendant's potential removal as a result of his instant conviction. *Id.* at 2-3. However, in light of the arguments of defense counsel and the Government, Probation amended its recommended sentence to three years of probation with general and special conditions of supervision at the instant sentencing hearing.

Defense counsel recommends a below-Guidelines sentence of time served without a term of supervised release. Def. Mem. at 2. Defense counsel acknowledges Defendant's prior conviction for Rape in the First Degree, for which Defendant was sentenced to five years of incarceration, PSR ¶ 19, and that Defendant committed a crime when he reentered the United States at a port of entry without seeking the requisite prior authorization. *Id.* at 1, 8. However, defense counsel emphasizes Defendant's illegal reentry was a means of survival after suffering years of horrific torture and abuse as a political prisoner in Guinea following his deportation from the United States. *E.g., id.* at 13; *see supra* Section II.A.1 (discussing Defendant's torture and abuse at Camp Makambo). Defense counsel asserts Defendant's experiences at Camp Makambo left serious physical and psychological impacts on Defendant, as discussed *supra* at


Section II.A.4. Indeed, defense counsel includes disturbing photographic evidence of the physical results of Defendant's torture. Def. Mem. at 6.

Defense counsel states ICE granted Defendant "deferral of removal" pursuant to the Convention Against Torture after an immigration judge found Defendant would likely be tortured again if he were to return to Guinea. *Id.* at 1; *see also* Gov't Mem. at 2; PSR Addendum at 1. As such, defense counsel asserts Defendant will be subject to intensive and indefinite ICE supervision until his deferral of removal ends; in other words, "possibly for the rest of his life." *Id.* at 1-2 (outlining conditions of supervision); *see also* Ex. A to Def. Mem. (conditions of supervision); Gov't Mem. at 2.

Defense counsel additionally argues a sentence of time served, which "accounts for the roughly seven months that [Defendant] spent in ICE custody while the charges in this case were pending as well as twelve months on home detention with electronic monitoring," Def. Mem. at 10, is appropriate when factoring in the following: (1) Defendant's Guideline range of imprisonment overstates his culpability for the offense because the Guidelines are "[d]ouble counting" his prior "single, aberrant, decade-old conviction," *id.* at 8 n.10; (2) Defendant's extensive rehabilitative efforts following his sexual assault conviction, which defense counsel argues was the culmination of a "long-series of self-destructive choices," *id.* at 4, 8-9; (3) the seven months Defendant spent in ICE custody at the Moshannon Valley Processing Center, for which defense counsel asserts Defendant should be given credit under 18 U.S.C. § 3585(b), *id.* at 10; (4) Defendant's compliance with his conditions of supervision while on pretrial release, *id.* at 2, 10; *see also* PSR Addendum at 1; (5) the need to avoid unwarranted sentencing disparities, Def. Mem. at 10-11, which the Court discusses further *infra* at Section II.F; and (6) Defendant's

need for continued mental and medical healthcare, which defense counsel argues Defendant would be unable to receive to the extent necessary if incarcerated, Def. Mem. at 11-13.

The Court has also read and considered the immigration documents and certificates exhibited to defense counsel's memorandum. Exs. A and B to Def. Mem.

The Government recommends a below-Guidelines sentence of probation. Gov't Mem. at 1. At the instant sentencing hearing, the Government clarified it was specifically recommending a sentence of three years of probation. While the Government recognizes the seriousness of Defendant's illegal reentry, the Government argues the reasons motivating Defendant's illegal reentry—political persecution resulting in Defendant's torture in a Guinean prison—are significantly mitigating such that a below-Guidelines sentence of probation is sufficient but not greater than necessary to achieve the goals of sentencing. *Id.* at 3.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not pointed the Court to any pertinent policy statements, and the Court has not found any on its own.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defense counsel argues a sentence of time served is necessary to avoid unwarranted sentencing disparities. *See* Def. Mem. at 10-11. As previously noted, defense counsel asserts a sentence of time served accounts for the approximately seven months Defendant spent in ICE custody and Defendant's twelve months of home detention with electronic monitoring. *Id.* at 10. With this is mind, defense counsel cites more than a dozen recent in-District cases where individuals convicted of illegal reentry received "time served sentences equivalent to fewer than 12 months' imprisonment." *Id.* at 10-11 (citing cases). Defense counsel cites seven additional cases where judges in the Eastern District of New York sentenced individuals to time served for illegal reentry where, in defense counsel's characterization, there is "far less mitigation than" in this case or "where the [G]overnment or Probation disagree." *Id.* at 11 (citing cases).

The Court premises its sentence on the nature and characteristics of this Defendant and the instant crime of conviction. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.  The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case.

### III.  CONCLUSION

For the reasons set forth above, the Court determines a sentence of three years of Probation with both the standard conditions and special conditions of supervision, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). In imposing this sentence, the Court varies

13

downwardly from the Guidelines in light of the significant mitigating factors in this case. As outlined by defense counsel at the instant sentencing hearing, the Court finds extraordinary circumstances exist to warrant not imposing a fine, restitution, or community service as a condition of probation under 18 U.S.C. § 3563(a)(2). The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3583(d) and 3563(a)(5).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addendum thereto, ECF Nos. 24, 30, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 25, 2024
Brooklyn, New York